Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHANDLER TULIN,<br><br>     Plaintiff,<br><br>vs.<br><br>MONEYGRAM INTERNATIONAL, INC., W. ALEXANDER HOLMES, ANTONIO O. GARZA, ALKA GUPTA, FRANCISCO LORCA, MICHAEL P. RAFFERTY, JULIE E. SILCOCK, W. BRUCE TURNER, and PEGGY VAUGHAN,<br><br>     Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(4) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Chandler Tulin ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against MoneyGram International, Inc. ("MoneyGram" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,"), for breaches of fiduciary duty, violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to merge the Company with Madison Dearborn Partners, LLC ("MDP"), via its affiliate Mobius

Parent Corp. and subsidiary Mobius Merger Sub, Inc. (Merger Sub) as a result of an unfair process, and to enjoin an upcoming stockholder vote on two proposed all stock reverse merger transactions set to be consummated collectively (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a February 15, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, MoneyGram shares will be cancelled and converted into the right to receive $11.00 in cash as merger consideration.  As a result of the consummation of the Proposed Transaction, MoneyGram will become a wholly owned subsidiary of MDP.

3.      Thereafter, on March 29, 2022, MoneyGram filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In approving the Proposed Transaction, the Individual Defendants have breached their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to the Proposed Transaction without first taking steps to ensure that Plaintiff in his capacity as a public Company stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or MoneyGram without regard for Plaintiff in his capacity as a public Company stockholder.

Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff in his capacity as a public Company stockholder.

6.     Furthermore, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.

7.     In violation of the Exchange Act and in further breach of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on March 29, 2022 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for MoneyGram, provided by MoneyGram management to the Board and the Board's financial advisors BofA Securities, Inc. ("BofA"); and, (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by BofA, if any, and provide to the Company and the Board.

8.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages suffered by Plaintiff resulting from the breaches of fiduciary duties and violations of the federal securities laws by Defendants.

## PARTIES

9.     Plaintiff is a citizen of California and, at all times relevant hereto, has been a MoneyGram stockholder.

10.     Defendant MoneyGram provides cross-border peer-to-peer payments and money transfer services in the United States and internationally. MoneyGram is incorporated in Delaware and has its principal place of business at 2828 N. Harwood Street, 15th Floor, Dallas, Texas 75201. Shares of MoneyGram common stock are traded on the Nasdaq under the symbol "MGI."

11.     Defendant W. Alexander Holmes ("Holmes") has been a Director of the Company at all relevant times.  Holmes also serves as the Chairman of the Board of Directors and the Company's Chief Executive Officer ("CEO").

12.     Defendant Antonio O. Garza ("Garza") has been a director of the Company at all relevant times.

13.     Defendant Alka Gupta ("Gupta") has been a director of the Company at all relevant times.

14.     Defendant Francisco Lorca ("Lorca") has been a director of the Company at all relevant times.

15.     Defendant Michael P. Rafferty ("Rafferty") has been a director of the Company at all relevant times.

16.     Defendant Julie E. Silcock ("Silcock") has been a director of the Company at all relevant times.

17.     Defendant W. Bruce Turner ("Turner") has been a director of the Company at all relevant times.

18.     Defendant Peggy Vaughan ("Vaughan") has been a director of the Company at all relevant times.

19.     Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

20.     Non-Party MDP is a leading private equity investment firm based in Chicago, Illinois.

21.     Defendants Merger Sub is a wholly owned subsidiary of MDP created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

23.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Exchange which is headquartered in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

25.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with MoneyGram and owe the

public stockholders of the Company, including Plaintiff, the duties of due care, loyalty, and good faith.

26.     By virtue of their positions as directors and/or officers of MoneyGram, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause MoneyGram to engage in the practices complained of herein.

27.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company public stockholders including Plaintiff.  To diligently comply with these duties, directors of a corporation must:

    a.  act with the requisite diligence and due care that is reasonable under the circumstances;

    b.  act in the best interest of the Company and its public stockholders, including Plaintiff;

    c.  use reasonable means to obtain material information relating to a given action or decision;

    d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

    e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

    f.  disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

28.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of MoneyGram, are obligated to refrain from:

      a.     participating in any transaction where the directors' or officers' loyalties are divided;

      b.     participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders including Plaintiff; and/or

      c.     unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders including Plaintiff.

29.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Plaintiff as a public stockholder of MoneyGram, including their duties of loyalty, good faith, and due care.

30.     As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for his MoneyGram common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

31.     MoneyGram International, Inc., together with its subsidiaries, provides cross-border peer-to-peer payments and money transfer services in the United States and internationally. The company operates through two segments, Global Funds Transfer and Financial Paper Products. The Global Funds Transfer segment offers money transfer services and bill payment services through third-party agents, including retail chains, independent retailers, post offices, banks, and other financial institutions; and digital solutions, such as moneygram.com, mobile solutions, digital partners, wallets, and account deposit services. The Financial Paper Products segment provides money orders to consumers through its agents and financial institutions under

the MoneyGram brand and on a private label or co-branded basis with various agents and financial institutions; and official check outsourcing services for banks and credit unions. MoneyGram International, Inc. was incorporated in 2003 and is based in Dallas, Texas.

32.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the October 28, 2021 press release announcing its Fiscal Year 2021 Q3 financial results, the Company highlighted that cross-border transactions grew 37% year-over-year with active cross-border customer growth increasing 31% year-over-year. Additionally, Digital Revenue reached a new quarterly record of $70 million.

33.    Speaking on the positive results, CEO Defendant Holmes reported "Consumers continue to value our digital-first strategy, as we delivered another strong quarter of digital growth and cross-border payment innovation. Our direct-to-consumer channel, MGO, reached a record high in volume and delivered incredibly strong revenue growth of 34% compared to last year, and 229% growth compared to 2019. Digital now represents 34% of money transfer transactions and we're on track to reach our goal of digital transactions representing 50% of all transactions by 2024." Holmes continued by stating "As we enter the next stage of our digital expansion, we are continuously focused on meeting consumer demand with a broader set of direct-to-consumer offerings. Our recently announced partnership with Stellar Development Foundation and Circle's USDC stablecoin for blockchain based payments, is a bold step in meeting the demands of a new fast-growing global consumer base. This partnership is further evidence of our leadership in pioneering innovative digital payment technologies."

34.    The third quarter was not an outlier, in fact MoneyGram has posted impressive results which have been sustained for quite some time. For example, in Q2 of 2021, MoneyGram boasted that total revenue had increased 18% to $329.3 million on the strength of money transfer revenue growth of 20% and transaction growth of 20%. Further, Total cross-border money transfer volume increased 41%.

35.     The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by MoneyGram.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success.

36.     Despite this upward trajectory, the Individual Defendants have caused MoneyGram to enter into the Proposed Transaction without providing requisite information to MoneyGram stockholders such as Plaintiff.

***The Flawed Sales Process***

37.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

38.     Notably, the Preliminary Proxy Statement fails to indicate whether a committee of independent and disinterested members of the Board was created to run the sales process, and if it was not, fails to indicate the specific reasoning for failing to do so.

39.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and MDP, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

40.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

***The Proposed Transaction***

41.     On February 15, 2022, MoneyGram and MDP issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **DALLAS and CHICAGO,** Feb. 15, 2022 /PRNewswire/ -- MoneyGram International, Inc. (NASDAQ: MGI) (the "Company"), a global leader in the evolution of digital P2P payments, and Madison Dearborn Partners, LLC ("MDP"), a leading private equity firm based in Chicago, today announced a definitive agreement under which funds affiliated with MDP will acquire all outstanding shares of MoneyGram for $11.00 per share in an all-cash transaction valued at approximately $1.8 billion. The purchase price represents a meaningful premium of approximately 50% to MoneyGram's unaffected closing stock price on December 14, 2021, the last trading day prior to media speculation regarding a possible transaction.
>
> "We are excited to enter into this transaction with MDP, which will deliver immediate and compelling value to shareholders and enable us to accelerate the advancement of our digital growth strategy," said Alex Holmes, MoneyGram Chairman and CEO. "This transaction is the culmination of a thorough process by the MoneyGram Board to enhance shareholder value while positioning our business for continued growth and expansion. MoneyGram has undergone a rapid transformation over the last several years to expand our digital capabilities and adapt to the evolving needs of our customers. By partnering with MDP and becoming a private company, we will have greater opportunities to innovate and transform MoneyGram to lead the industry in cross-border payment technology and deliver a more expansive set of digital offerings, while leveraging our global platform for new customers and use cases. This transaction provides exciting opportunities for our dedicated MoneyGram team and partners, and I'm incredibly excited about the path ahead."
>
> "MoneyGram is a leader in cross-border payments with one of the strongest brands and reputations in the industry, and we are excited to partner with Alex and his leadership team as they continue to lead MoneyGram's digital growth strategy," said Vahe Dombalagian, a Managing Director on MDP's Financial and Transaction Services team. "We are looking forward to applying our substantial experience growing digital businesses and deep payments knowledge to help MoneyGram further strengthen its market-leading cross-border capabilities and enhance its digital platform. Alex and his team have transformed MoneyGram over the past few years, and we are excited to help them execute the important work ahead to continue evolving and growing MoneyGram's business."
>
> **Transaction Details**
>
> Under the terms of the agreement, which was unanimously approved by the MoneyGram Board of Directors, MoneyGram shareholders will receive $11.00 in

cash for each share of MoneyGram common stock they own. In addition, upon the closing of the transaction MDP will be refinancing the Company's outstanding debt, which was $799 million as of December 31, 2021.

Committed debt financing for the transaction has been provided by Goldman Sachs & Co. LLC, Deutsche Bank Securities Inc. and Barclays. The transaction is expected to close in the fourth quarter of 2022, subject to customary closing conditions, including approval by MoneyGram shareholders and receipt of regulatory approvals, including required approvals in various jurisdictions related to money transmitter licenses. Upon completion of the transaction, MoneyGram will become a private company and MoneyGram shares will no longer be listed on any public market.

The agreement includes a 30-day "go-shop" period expiring on March 16, 2022. During this period, the MoneyGram Board and its advisors are permitted to actively initiate, solicit, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that may offer alternative acquisition proposals. MoneyGram will have the right to terminate the MDP agreement to enter into a superior proposal subject to the terms and conditions of such agreement. There can be no assurance that this "go-shop" process will result in a superior proposal or that any other transaction will be approved or completed. MoneyGram does not intend to disclose developments with respect to the go-shop process unless and until its Board of Directors determines such disclosure is appropriate or is otherwise required.

**Leadership and Headquarters**

Following the close of the transaction, it is expected that MoneyGram will continue to operate under the MoneyGram brand and be led by Alex Holmes and the Company's existing leadership team. MoneyGram will maintain its headquarters in Dallas, Texas.

***The Inadequate Merger Consideration***

42.     Significantly, the Company's financial prospects, opportunities for future growth, and investment in innovation establish the inadequacy of the merger consideration.

43.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company. For example, the Company has traded as high as $12.36

per share within the past 52 weeks, a value that is approximately 12.36% greater than the consideration offered in the Proposed Transaction.

44.     Moreover, post-closure, Plaintiff will be frozen out of his ownership interest in the Company and will not be able to reap the rewards of the Company's future prospects.

45.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for MDP at the expense of Plaintiff and MoneyGram stockholders.

***Preclusive Deal Mechanisms***

46.     The Merger Agreement contains certain provisions that unduly benefit MDP by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that constrains MoneyGram's ability to enter into alternative strategic transactions.  Notably, in the event of termination, the merger agreement requires MoneyGram to pay up to approximately $32.8 million to MDP, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, MoneyGram must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

47.     The Merger Agreement also contains a "No Solicitation" provision that, after a brief period of time post-entry into the Merger Agreement, restricts MoneyGram from considering alternative acquisition proposals by, *inter alia*, constraining MoneyGram's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any

alternative proposal, but permits the Board to consider an unsolicited bona fide acquisition proposal if it constitutes or is reasonably calculated to lead to a "*Superior Proposal*" as defined in the Merger Agreement.

48.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.   Here, the Individual Defendants agreed to provide MDP information in order to match any other offer, thus providing MDP access to the unsolicited bidder's financial information and giving MDP the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of MDP.

49.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests Plaintiff in his capacity as a public Company stockholder.

50.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

51.     The breakdown of the benefits of the deal indicate that MDP and MoneyGram insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of MoneyGram.

52.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably,

while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for.

| Name | Number of Shares Owned | Consideration for Shares Owned ($) |
|---|---|---|
| **Non-Employee Directors** | | |
| Antonio O. Garza | 220,555 | $ 2,426,105 |
| Alka Gupta | 10,715 | $ 117,865 |
| Francisco Lorca | 19,634 | $ 215,974 |
| Michael P. Rafferty | 196,787 | $ 2,164,657 |
| Julie E. Silcock | 33,800 | $ 371,800 |
| W. Bruce Turner | 466,843 | $ 5,135,273 |
| Peggy Vaughan | 155,608 | $ 1,711,688 |
| **Executive Officers** | | |
| Lawrence Angelilli | 420,726 | $ 4,627,986 |
| Kamila K. Chytil | 110,943 | $ 1,220,373 |
| Adrianna Greenwald | 120,307 | $ 1,323,377 |
| W. Alexander Holmes | 739,620 | $ 8,135,820 |
| Hilary Jackson | — | $ — |
| Grant A. Lines | 544,800 | $ 5,992,800 |
| Andres Villareal | 284,598 | $ 3,130,578 |
| Robert L. Villaseñor | 136,737 | $ 1,504,107 |

53.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  While the Preliminary Proxy Statement provides the following information regarding these holdings, it fails to provide an accounting of how much consideration said amounts will be exchanged for upon the consummation of the Proposed Transaction.

| Name | Number of Shares Subject to Outstanding Vested MoneyGram Options Awards |
|---|---|
| W. Alexander Holmes(1) | 26,835 |
| Lawrence Angelilli(2) | 14,135 |

| Name | Number of Shares Subject to MoneyGram Pre-2023 Time-Based RSUs and Pre-2023 Performance-Based RSUs Subject only to Time-Based Vesting |
|---|---|
| W. Alexander Holmes | 778,638 |
| Lawrence Angelilli | 239,904 |
| Grant Lines | 239,904 |

| | |
|---|---|
| Robert Villaseñor | 244,555 |
| Andres Villareal | 235,252 |
| Adrianna Greenwald | 180,683 |
| Hilary Jackson | 189,345 |
| Kamila K. Chytil* | — |

| Name | Number of Shares Subject to MoneyGram Pre-2023 Time-Based RSUs |
|---|---|
| Antonio O. Garza | 18,769 |
| Alka Gupta | 18,769 |
| Francisco Lorca | 18,769 |
| Michael P. Rafferty | 18,769 |
| Julie E. Silcock | 18,769 |
| W. Bruce Turner | 18,769 |
| Peggy Vaughan | 18,769 |

| Name | Number of Shares Subject to MoneyGram Pre-2023 Performance-Based RSUs at Target |
|---|---|
| W. Alexander Holmes | 139,535 |
| Lawrence Angelilli | 30,233 |
| Grant Lines | 26,163 |
| Robert Villaseñor | 32,559 |
| Andres Villareal | 30,233 |
| Adrianna Greenwald | 32,559 |
| Hilary Jackson | 27,907 |

54.    Additionally, certain MoneyGram insiders will be the recipients of large performance cash awards, not shared amongst Plaintiff and other public stockholders of the Company, as follows:

| Name | Total Cash Value of MoneyGram Pre-2023 Performance Cash Awards at Target |
|---|---|
| W. Alexander Holmes | $ 2,763,020.84 |
| Lawrence Angelilli | $ 795,000.00 |
| Grant Lines | $ 795,000.00 |
| Robert Villaseñor | $ 820,000.00 |
| Andres Villareal | $ 770,000.00 |
| Adrianna Greenwald | $ 508,333.34 |
| Hilary Jackson | $ 500,000.00 |
| Kamila K. Chytil* | $ — |

55.     Moreover, certain employment agreements with certain MoneyGram executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff, and will be paid out as follows:

**Golden Parachute Compensation**

| Name | Cash(1) | Equity(2) | Perquisites/ Benefits(3) | Other(4) | Total |
|------|---------|-----------|--------------------------|----------|-------|
| W. Alexander Holmes | $7,076,333 | $10,099,903 | $  28,696 | $750,000 | $17,954,932 |
| Lawrence Angelilli | $1,353,296 | $ 2,971,507 | $    — | $162,500 | $ 4,487,303 |
| Grant Lines | $1,341,542 | $ 2,926,737 | $    — | $162,500 | $ 4,430,779 |
| Andres Villareal | $1,281,282 | $ 2,920,335 | $    — | $150,000 | $ 4,351,617 |
| Robert Villaseñor | $1,366,542 | $ 3,048,254 | $    — | $175,000 | $ 4,589,796 |

56.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57.     Thus, while the Proposed Transaction is not in the best interests of MoneyGram, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

58.     On March 29, 2022, the MoneyGram Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act and in breach of their fiduciary duties, failed to provide Plaintiff in his capacity as a Company

stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

59.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Whether a committee of independent and disinterested Board members was created to run the sales process and:

        i.  If no such committee was created, the specific reasoning as to why;

        ii.  If such a committee was created, the specific membership on that committee and the specific powers of that committee including if it held the power to veto or approve potential strategic alternatives;

    b.  Whether the confidentiality agreements entered into by the Company with MDP differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

    c.  All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including MDP, would fall away; and

    d.  Communications    regarding    post-transaction    employment    during    the

negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning MoneyGram's Financial Projections*

60.     The Preliminary Proxy Statement fails to provide material information concerning financial projections for MoneyGram provided by MoneyGram management to the Board and BofA and relied upon by BofA in their analyses.  The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

61.     Notably the Preliminary Proxy Statement reveals that as part of its analyses, BofA, "reviewed certain internal financial and operating information with respect to the business, operations and prospects of MoneyGram furnished to or discussed with BofA Securities by the management of MoneyGram, including certain financial forecasts relating to MoneyGram prepared by the management of MoneyGram."

62.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that MoneyGram management provided to the Board and BofA.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the

company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

63.     With regard to the Projections prepared by MoneyGram Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

        a.     Adjusted EBITDA, including all underlying necessary metrics, adjustments, and assumptions, including specifically: interest expense, tax, depreciation and amortization, special charges and other one-time items, stock-based compensation and amortization of intangibles.

64.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

65.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

66.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of BofA's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

> *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by BofA*

67.     In the Preliminary Proxy Statement, BofA describes its fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to

include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

68.     With respect to the *Selected Publicly Traded Companies Analyses*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The specific inputs and assumptions used to determine the utilized representative range of 6.0x to 8.0x to the Company's calendar year 2022 EBITDA multiples; and

    b.   The specific inputs and assumptions used to determine the utilized representative range of 5.5x to 7.5x to the Company's calendar year 2023 EBITDA multiples

69.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

    a.   The date on which each precedent transaction closed;

    b.   The value of each precedent transaction analyzed; and

    c.   The specific inputs and assumptions used to determine the utilized selected range of TV / LTM Adjusted EBITDA (Burdened) multiples of 7.5x to 10.5x to MoneyGram's calendar year 2021 estimated Adjusted EBITDA.

70.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy fails to disclose the following:

    a.   The terminal value for the Company calculated;

    b.   The specific inputs and assumptions used to determine the utilized terminal multiple range of 6.0x to 8.0x Adjusted EBITDA (Burdened);

      c.   The specific inputs and assumptions used to determine the utilized discount rate range of 8.3% to 10.4%;

      d.   MoneyGram's weighted average cost of capital utilized.

71.     With respect to the analysis regarding on-year future stock price targets, the Preliminary Proxy fails to disclose the following:

      a.   The specific inputs and assumptions used to determine the utilized discount rate of 10.9%; and

      b.   MoneyGram's weighted average cost of capital utilized.

72.     These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

73.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public MoneyGram stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Breach of Fiduciary Duties

### (Against the Individual Defendants)

74.     Plaintiff repeats all previous allegations as if set forth in full herein.

75.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff in his capacity as a Company public stockholder.

76.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in MoneyGram.

77.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the Plaintiff in his capacity as a Company public stockholder by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of the Company to Plaintiff in his capacity as a Company public stockholder.

78.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff in his capacity as a Company public stockholder all material information necessary for it to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

79.     The Individual Defendants dominate and control the business and corporate affairs of MoneyGram, and are in possession of private corporate information concerning MoneyGram's assets, business and future prospects. Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff in his capacity as a Company public stockholder which makes it inherently unfair for them to benefit their own interests to the exclusion of Plaintiff.

80.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff in his capacity as a Company public stockholder.

81.     As a result of the actions of the Individual Defendants, Plaintiff in his capacity as a Company public stockholder will suffer irreparable injury in that he has not and will not receive

its fair portion of the value of MoneyGram's assets and has been and will be prevented from obtaining a fair price for his holdings of MoneyGram common stock.

82.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff in his capacity as a Company public stockholder, all to the irreparable harm of the Plaintiff.

83.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### (Against Defendant MoneyGram)

84.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

85.     Defendants MoneyGram, knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

86.     As a result this conduct, Plaintiff in his capacity as a Company public stockholder will suffer irreparable injury in that he has not and will not receive his fair portion of the value of MoneyGram's assets and has been and will be prevented from obtaining a fair price for its holdings of MoneyGram common stock.

87.     Plaintiff has no adequate remedy at law

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

88.     Plaintiff repeats all previous allegations as if set forth in full herein.

89.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

90.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

91.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

92.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have

known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

93.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

94.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

95.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

96.     Plaintiff repeats all previous allegations as if set forth in full herein.

97.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

98.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved,

ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

99.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of MoneyGram's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

100.    The Individual Defendants acted as controlling persons of MoneyGram within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause MoneyGram to engage in the wrongful conduct complained of herein. The Individual Defendants controlled MoneyGram and all of its employees. As alleged above, MoneyGram is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the

fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.      Directing the Individual Defendants to comply with the Exchange Act and their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E.      Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

F.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.      Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: March 31, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*